USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/22/2017__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ANEUDYS CARMELO ESTEVEZ,

                        Plaintiff,

                 -v-

S & P SALES AND TRUCKING LLC,
KERSIA CORPORATION d/b/a GOOD-O BEVERAGE
COMPANY, and RICHARD HAHN

                        Defendants.

------------------------------------------------------------------X

17 Civ. 1733 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Aneudys Carmelo Estevez brings this action against defendants S & P Sales and Trucking LLC ("S & P"), Kersia Corporation d/b/a Good-O Beverage Company ("Good-O"), and Richard Hahn ("Hahn") (collectively, "defendants") under 42 U.S.C. § 1981 ("Section 1981"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the New York City Human Rights Law, New York City Administrative Code § 8-101 *et seq.* ("NYCHRL"). Estevez alleges that, in connection with his employment or its termination, the defendants unlawfully engaged in racial and national origin discrimination; failed to pay him overtime wages; retaliated against him based on his involvement in a protected activity; and failed to pay him for unused vacation and sick time. Before the Court is defendants' motion to dismiss the claims of racial discrimination (brought under Section 1981 and the NYCHRL) and national origin discrimination (brought under the NYCHRL). For the following reasons, the motion is denied.

I.   **Background**

   A.   **Facts**[1]

Good-O, owned by Hahn, distributes Good-O brand soft drinks. Am. Compl. ¶ 30. Good-O's distribution center and principal place of business is 1801 Boone Ave., Bronx, New York ("the Bronx Warehouse"). Around 2011, Hahn founded S & P, which conducted Good-O's transport operations. *Id.* ¶ 32. During the relevant period, Hahn, as the Chief Executive Officer of both Good-O and S&P, made final personnel decisions, including with respect to hiring and firing. *Id.* ¶ 18, 22, 25–26. Estevez alleges that Good-O, S & P, and Hahn—the three defendants here—were joint employers.

Estevez is of Hispanic race and Dominican national origin. *Id.* ¶ 28. In or before 2006, Estevez began working as a truck driver at the Bronx Warehouse for Good-O. *Id.* ¶¶ 29, 31. After S & P was founded in 2011, Estevez's paychecks came from S & P. *Id.* ¶ 32.

Around 2013, defendants changed Estevez's responsibilities to that of a warehouse clerical worker; although defendants called him a "Warehouse Manager," Estevez did not have any managerial responsibilities. *Id.* ¶ 33, 35–36. He continued to work out of the Bronx Warehouse. *Id.* ¶ 34. His supervisor was Joseph Pignatella ("Pignatella"), who also made decisions regarding hiring and firing, promotion and demotion on defendants' behalf. *Id.* ¶ 34.

On or around September 29, 2016, defendants terminated Estevez's employment. They alleged that he had been involved in a scheme to sell wooden pallets belonging to them. *Id.* ¶ 43. Estevez's responsibilities were transferred to two individuals: Keith Vera ("Vera"), a Portuguese individual believed by Estevez to be American-born, and "Mike," an Italian-American, whose

---

[1] This account is drawn from the Amended Complaint. Dkt. 120 ("Am. Compl."). For the purpose of resolving the motion to dismiss, all factual allegations in the Amended Complaint are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

last name is not alleged. *Id.* ¶ 47. At all relevant times, defendants employed another "Warehouse Manager," Joseph Pignatella Jr. ("Pignatella Jr."), a native-born American of Italian origin. *Id.* ¶ 45–46. Estevez alleges that although Pignatella Jr. stole a significant amount of cash from the joint employers, they did not terminate him. *Id.* ¶ 45. Pignatella Jr. appears to be Pignatella's son. *See* Dkt. 16 ("Defs' Br.") at 6; Dkt 24 ("Pl's Opp.") at 7.

### B. Procedural History

Estevez filed the initial complaint on March 8, 2017. Dkt. 1. In pertinent part, it claimed that defendants' termination of Estevez was an act of racial discrimination under Section 1981 and the NYLL and national origin discrimination under the NYCHRL. On May 31, 2017, after defendants moved to dismiss these claims, Dkt. 11, Estevez filed the Amended Complaint. Dkt. 12. On June 23, 2017, defendants again moved to dismiss these claims, Dkts. 21–22. On June 26, 2017, Estevez filed an opposition. Pl's Opp. On July 5, 2017, defendants filed a reply. Dkt. 25 ("Defs' Reply Br.").

## II. Legal Standards on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145 (2d Cir. 2012).

However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. Discussion

### A. Racial Discrimination under Section 1981

Claims of racial discrimination under Section 1981, like those under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), are analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987). To make out a *prima facia* case under this framework, the plaintiff must show that: (1) he belongs to a protected class, (2) he was qualified for his job, (3) he "suffered an adverse employment action," and (4) "the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Although the plaintiff is ultimately required to prove that the defendant acted with discriminatory motivation, an initial showing under the *McDonnell Douglas* framework will create "a temporary 'presumption' of discriminatory motives, shifting the burden of production to the employer to offer" a non-discriminatory justification for its actions. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).

At the motion to dismiss stage, however, a plaintiff need not even "plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead "the facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. As the Circuit has counseled, "[a]t

4

the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face." *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015).

A plaintiff may raise an interference of discriminatory motivation "by showing that the employer . . . treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To do so, the plaintiff must allege that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Id.* (internal quotation marks omitted). What this means, precisely, varies by case. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014). However, the Second Circuit has identified as relevant factors: (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards; and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. *See Graham*, 230 F.3d at 40. "The plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance,' but need not be 'identical.'" *Daikin Am. Inc.*, 756 F.3d at 230.

Here, Estevez alleges that he was similarly situated to Pignatella Jr., an Italian-American. Each held the same job as a "Warehouse Manager" at the Bronx Warehouse. Each was supervised by Joseph Pignatella, Pignatella Jr.'s father. At the motion to dismiss stage, these allegations are enough to plausibly allege that Estevez and Pignatella Jr. were subject to the same workplace standards. *See id.* (finding plaintiff similarly situated to three co-employees, where all three worked in the same business-development group and two reported to plaintiff's supervisor). And the conduct which defendants cited as the basis for firing Estevez is fairly comparable to the conduct in which Pignatella Jr. allegedly engaged: The Amended Complaint alleges that whereas Estevez was fired for stealing wooden pallets, Pignatella Jr., stole a

5

significant amount of cash from defendants but kept his job. In pursuing dismissal, defendants do not argue that these infractions were materially dissimilar.

Defendants instead argue that Pignatella Jr.'s retention was the product of a race-neutral justification: nepotism. They argue that it is fair to infer that Pignatella Jr. was retained despite his thievery, not because he is white and Estevez is Hispanic, but because his father was his work supervisor.

Defendant's inference is plausible, and in the event that nepotism—as opposed to racial discrimination—is shown to have been the basis for Pignatella Jr.'s retention, defendants will be entitled to prevail. "[F]ederal antidiscrimination law does not forbid an employer from making an employment decision 'based on loyalty to a friend or relative.'" *Vill. of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016) (quoting *Neal v. Roche*, 349 F.3d 1246, 1251 (10th Cir. 2003)). But the inference that Estevez pursues is also plausible, and on a motion to dismiss, it is not for this Court to choose among plausible inferences. "Whether there exist[s] [a] non-pretextual, non-discriminatory explanation[] for the defendants' employment decisions—a question as to which the defendants bear the burden of production—is not properly decided on a motion to dismiss for failure to state a claim." *Daikin Am. Inc.*, 756 F.3d at 230–31. Whether this explanation, as opposed to Estevez's alternative claim that he was more harshly treated because of his race, is more convincing is properly left for later stages in the proceedings.

The Court accordingly holds that Estevez has pled sufficient facts on which to find that defendants treated a similarly situated employee who was of a different racial group more favorably than him, and thus to plausibly support a minimal inference of discriminatory motivation. Estevez has, therefore, sufficiently pled his case of racial discrimination under

6

§ 1981. *Cf. Belabbas v. Inova Software Inc.*, No. 16 CIV. 7379 (LGS), 2017 WL 3669512, at *5 (S.D.N.Y. Aug. 24, 2017).[2]

### B. Racial Discrimination under the NYCHRL

As noted, Estevez also brings a claim of racial discrimination under the NYCHRL. The NYCHRL's standards governing discrimination claims are as or more generous to plaintiffs than those under the analogous federal statutes, such that a claim that satisfies federal law necessarily satisfies the NYCHRL. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (characterizing federal civil rights statutes as "a *floor* below which the City's Human Rights law cannot fall." (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009))). Because the Amended Complaint pleads sufficient facts to make out a claim of racial discrimination under 42 U.S.C. §1981, it follows that it also pleads a viable claim under the NYCHRL.

### C. National Origin Discrimination under the NYCHRL

For much the same reasons, Estevez's claim under the NYCHRL of discrimination based on national origin is also viable. Much as the Amended Complaint plausibly alleges that the different races of Estevez and Pignatella accounted for their different treatment, so too does it plausibly allege that Estevez was terminated on account of his Dominican origin while his

---

[2] Estevez separately argues that his replacement by Vera and "Mike" also evidences discriminatory motivation on the part of defendants. The fact that a plaintiff was replaced by a person or people from outside his or her protected class will ordinarily "suffice for the required inference of discrimination." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). Here, the parties do not dispute that Mike is white. However, they do dispute whether Vera, as a person of Portuguese ancestry, is Hispanic. Because the Court has already concluded that Estevez has met his burden as to his § 1981 claim, the Court has no occasion to consider whether, given the dispute over Vera's proper racial classification, Estevez's replacement by her and Mike would independently have met Estevez's burden on the § 1981 claim.

comparator, the Italian-American Pignatella Jr., was spared. These allegations make out a claim of national origin discrimination.

## CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss Estevez's discrimination claims. The Clerk of Court is respectfully directed to close the motions pending at dockets 15 and 21.

The parties are directed, by Wednesday, November 29, 2017, to submit a joint case-management plan, consistent with this Court's Individual Rules, that contemplates the close of fact discovery within four months.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 22, 2017
New York, New York